

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00324-CV

**IN THE INTEREST OF Z.K.W.**, Z.K.C., V.L.S., Jr., and V.O.K.S., Children

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-PA-02567
Honorable Monique Diaz, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed: October 23, 2019

AFFIRMED

Zoe[1] appeals an order terminating her parent–child relationship with her four children. Her sole issue is that the evidence is legally and factually insufficient to support the trial court's finding that termination is in the children's best interest. We affirm the order.

### PROCEDURAL BACKGROUND

On November 9, 2017, the Texas Department of Family and Protective Services filed a petition for protection of the children and termination of the parent–child relationship between Zoe and Z.K.W. (born in 2008), Z.K.C. (born in 2012), V.L.S., Jr. (born in 2013), and V.O.K.S. (born in 2016). The children were removed based on allegations that Z.K.W. had called 9-1-1 because

---

[1] To protect the identity of the minor child, we refer to the appellant by an alias and the children by their initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

Zoe "was found vomiting and in an altered state." Zoe was transported by an ambulance to a hospital where she tested positive for cocaine and alcohol. Zoe was placed on a safety plan, but again tested positive for cocaine. The children were then removed from Zoe.

The case proceeded to a bench trial on May 1, 2019.[2] Zoe's counsel appeared on her behalf and announced "not ready" because Zoe was not physically present. Zoe's counsel explained Zoe was "still attempting to work services" and "went to inpatient rehab" the morning of trial.[3] Three witnesses testified for the Department. The trial court also admitted Zoe's family service plan into evidence. At the close of trial, the trial court terminated Zoe's parent–child relationship with all four children. Zoe timely filed a notice of appeal.

### DISCUSSION

Zoe's sole issue is that there is legally and factually insufficient evidence to support the trial court's best-interest finding. To terminate parental rights, the Department must prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1) and (2) termination is in the child's best interest. TEX. FAM. CODE §§ 161.001(b), 161.206(a). We review the legal and factual sufficiency of the evidence using well-established standards of review. *See id.* § 101.007; *In re J.F.C.*, 96 S.W.3d 256, 263–67 (Tex. 2002). Zoe does not challenge the trial court's findings of the predicate grounds in subsection 161.001(b)(1), that she constructively abandoned the children, failed to comply with court-ordered provisions of her family service plan, and knowingly endangered the children by conduct, surroundings, and her drug use. We therefore consider whether there is legally and factually sufficient evidence to support the trial court's best-interest finding.

---

[2] Under section 263.401(b) of the Texas Family Code, the trial court signed an order retaining the suit on the court's docket until May 10, 2019.

[3] After a recess at trial, it was reported that Zoe had not actually enrolled in an inpatient program.

In determining the best interest of a child, we apply the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

The testimony of the Department's case investigator and Zoe's family service plan showed Zoe was, as of December 2017, on probation for possession and delivery of drugs since 2010. There was also testimony that Zoe was arrested for child endangerment in 2010. On September 24, 2017, the Department received a referral reporting that Zoe was transported to a hospital because she "was found vomiting and in an altered state," and Z.K.W. had called 9-1-1. Zoe arrived at the hospital unresponsive and tested positive for cocaine and alcohol. In November 2017, after the suit was filed, Zoe against tested positive for cocaine. The Department removed the children based on Zoe's drug use, criminal history, and her inability to provide a safe and protective home environment for her children. Zoe was placed on a safety plan, but she did not take advantage of any of the services offered to avoid the removal of the children.

The evidence shows that after the children were removed, Zoe was given a family service plan. Zoe substantially completed several of the requirements, but never completed a drug rehabilitation program. Zoe started outpatient program services, but she was discharged several times, and an involuntary inpatient program was recommended. Zoe did not appear for the trial and, although Zoe's attorney stated she had checked in for an inpatient drug program at a shelter

earlier that morning, there was subsequent testimony showing Zoe had not enrolled in that inpatient program. The testimony also showed the shelter had intake for its inpatient programs only on Tuesdays and Thursdays, and trial was held on a Wednesday.

The Department's legal caseworker testified that at the time of the temporary orders hearing, Zoe was living in a shelter and was in the process of moving to a relative's house. He also testified Zoe tested positive for marijuana in February 2018, and there were concerns that Zoe was coming to her visits with the children under the influence of drugs. The evidence showed Zoe attended approximately 25% to 45% of her visits with the children. The evidence also showed the oldest child, Z.K.W., and Zoe had a strong bond, and Z.K.W. missed her. There was evidence that the other children desired to remain in their current placements. The two older children were placed with a paternal relative, and the two younger children were placed with a foster mother who planned to adopt them. Zoe's parole officer testified some of the children had experienced emotional and behavioral problems, but they improved in their current placements. He further testified Zoe had problems maintaining stable housing and stable employment. We hold the evidence is legally and factually sufficient to support the trial court's best-interest finding. *See id.*

## CONCLUSION

We affirm the order of termination.

Luz Elena D. Chapa, Justice